**Eric M. ROLL, Plaintiff,**

v.

**TRACOR, INC., et al., Defendants.**

**No. CV–S–98–1472–RSL.**

United States District Court,
D. Nevada.

June 13, 2000.

Gary Logan, Las Vegas, NV, for Plaintiff.

Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, TX, for Defendants.

**ORDER**

LEAVITT, United States Magistrate Judge.

This case comes before the court on defendants' First Motion for Summary Judgment (# 10). The court has carefully considered the motion, the Brief in support of the motion (# 11), plaintiff's Opposition (# 83), defendant's Reply (# 86), and the arguments presented by counsel during the hearing on November 12, 1999.

On November 16, 1994, plaintiff Eric Roll was seriously injured when approximately seventy-five (75) MJU–7/B countermeasure flares ignited accidentally in a work area at Nellis AFB. The flares in question were manufactured by defendant Tracor Aerospace pursuant to a government contract. In this action Roll alleges, among other things, theories of strict lia-

bility and negligence arising out of faulty workmanship by Tracor during the manufacturing process.

Because the flares were manufactured pursuant to a government contract, Tracor contends that under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), this case is subject to the government contractor defense, which renders Tracor immune from civil liability as a matter of law. In *Boyle*, the Court held that "[l]iability for design defects in military equipment cannot be imposed [against a government contractor], pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512, 108 S.Ct. 2510. Tracor contends that it is undisputed that the design specifications here at issue, which were drawn by the government itself, were reasonably precise, and that the subject flares conformed to those specifications.[1] Hence, in Tracor's view, this is a classic case for the application of the government contractor defense.

Roll contends that his injuries were caused by a manufacturing defect, and that because *Boyle* applies only to design defects, the government contractor defense is unavailable to Tracor. More specifically, Roll contends that the Air Force investigation of the mishap demonstrates that a necessary (though not sufficient) condition for inadvertent ignition of the MJU–7/B flare is the presence of loose particles of ignition composition in or near the flare's impulse cartridge port, and that expert testimony reflects that out-of-place ignition material can only occur during the manufacturing process. Hence, in Roll's view, a substantial factor in the chain of events leading to the inadvertent ignition was a manufacturing defect, which is beyond the scope of the holding in *Boyle*.

Tracor counters that in the Ninth Circuit *Boyle* is construed to reach not only design defect claims, but manufacturing defect claims as well. *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749 (9th Cir.1997). *Snell* was a wrongful death action arising out of the crash of a Marine Corps helicopter manufactured by the defendant Bell. The complaint alleged defects in the design and manufacture of the drive shaft and component parts. As to the manufacturing defect claim, the court stated:

We agree with the district court that the military contractor defense can apply to manufacturing defects. Although *Boyle*'s holding concerned liability for design defect claims, the Court's reasoning encompasses claims alleging manufacturing defects.... Thus, whether the defense applies to a claim based on an alleged manufacturing defect depends on whether the particular product at issue was to be manufactured in conformity with reasonably precise specifications approved by the government.... In the absence of proof of reasonably precise specifications approved by the government, the premise of the defense—the exercise of discretion by the government—is lacking. fn3

\* \* \* \* \* \*

fn.3 Although conformity with government-approved specifications is likely to be the paradigm for the defense applied to manufacturing defect claims, the defense might also be supported by evidence that the contractor, in selecting a particular component or employing a particular process, was following specific directions of a government officer reflecting the latter's exercise of judgment.

\* \* \* \* \* \*

Because the record does not permit finding as a matter of law that the government approved reasonably precise specifications for the drive shaft and its components, it necessarily precludes ap-

---

1. The matter of warnings is not an issue in this case.

plication of the military contractor defense as a matter of law to Snell's manufacturing defect claim.

*Id.* Hence, under *Snell,* the holding in *Boyle* applies to manufacturing defect claims where there are reasonably precise, government approved manufacturing specifications (as opposed to design specifications), and a manufacturing process that conforms to those specifications; or, to cases in which there is "evidence that the contractor, in selecting a particular component or employing a particular process, was following specific directions of a government officer reflecting the latter's exercise of judgment." *Snell,* 107 F.3d at 749, n. 3.

■ The government contractor defense is an affirmative defense. *Snell,* 107 F.3d at 746. It therefore is Tracor's burden to establish the defense. *McKay v. Rockwell Int'l Corp.,* 704 F.2d 444, 453 (9th Cir. 1983). In order to demonstrate that the defense applies as a matter of law to Roll's manufacturing defect claim, Tracor must establish either (1) the existence of reasonably precise manufacturing specifications approved by the government, or (2) that in employing a particular manufacturing process Tracor followed "specific directions of a government officer reflecting the latter's exercise of judgment." *Snell,* 107 F.3d at 749, n. 3. The court's attention must therefore focus on the manufacturing process here at issue.

■ Tracor has not met its burden of proof. The record does not contain evidence of government approved manufacturing specifications. Tracor points only to evidence that government inspectors who were on site at the manufacturing plant signed off on the completed flares. The record is devoid of evidence of the manufacturing process itself, and the precise role the government inspectors played in that process. In light of the fact that several thousand MJU–7/B flares were manufactured per day, evidence that an inspector merely "signed off" on the flares, without more, fails to demonstrate by a preponderance of the evidence that the manufacturing process conformed to the specific, independent directions of a government official.

In determining whether a claimed defect is one of "design" for purposes of the government contractor defense, the proper focus is the protection of discretionary government functions for which the defense is intended. If a defect is one inherent in the product or system that the government has approved, it will be covered by the defense. Where a defect is merely an instance of shoddy workmanship, it implicates no federal interest. This distinction between "aberrational" defects and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design.... Stated another way, the distinction is between an unintended configuration, and an intended configuration that may produce unintended and unwanted results.

*Harduvel v. General Dynamics Corp.,* 878 F.2d 1311, 1317 (11th Cir.1989). On this summary judgment motion Tracor has not met its burden to establish that the alleged manufacturing defect in question—out-of-place ignition material—is one inherent in and the result of a government approved manufacturing process. The court finds that for summary judgment purposes the USAF report on the mishap investigation and the expert opinions of Del Callicotte and David Dillehay create a material question of fact as to whether the inadvertent ignition of the mishap flares resulted from a manufacturing defect that was aberrational in nature and therefore implicated no federal interest. Accordingly, the court is unable to apply the government contractor defense as a matter of law to Roll's manufacturing defect claim.

IT IS THEREFORE ORDERED that Tracor's First Motion for Summary Judgment (# 10) is denied.